UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| DONALD DUPRE | CIVIL ACTION NO. 6:21-3817 |
| VERSUS | JUDGE DOUGHTY |
| OUR LADY OF LOURDES REGIONAL MEDICAL CENTER, INC., ET AL | MAG. JUDGE WHITEHURST |

## REPORT AND RECOMMENDATION

Pending before the undersigned magistrate judge is the Motion to Remand [Rec. Doc. 18] filed by the plaintiff, Donald Dupre ("plaintiff"). The motion is opposed by defendants Pfizer, Inc. ("Pfizer") and Hospira, Inc. ("Hospira") [Rec. Doc. 24] and defendant Our Lady of Lourdes Regional Medical Center, Inc. ("OLOL") [Rec. Doc. 25]. Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that Plaintiff's Motion to Remand be GRANTED.

### FACTUAL AND PROCEDURAL BACKGROUND

The instant lawsuit arises out of injuries suffered by the plaintiff after a medical procedure at OLOL on September 21, 2020. Prior to surgery, on September 9, 2020, the plaintiff presented to Azeem Khan, M.D., a cardiothoracic surgeon, with a history of coronary artery disease and hiatal hernia. [Rec. Doc. 1-1, ¶ 4] The plaintiff also had aortic valve insufficiency and a history of atrial

fibrillation. Id. At this visit, Dr. Khan determined that the plaintiff was a candidate for coronary artery bypass graft surgery ("CABG") and a possible Maze procedure. Id.

On September 21, 2020, the plaintiff was admitted to OLOL Heart Hospital in Lafayette, Louisiana to undergo CABG. [Rec. Doc. 1-1, ¶ 5] The surgery was performed by Dr. Azeem Khan with the assistance of his brother, Dr. Imtiaz Khan. Id. During the intra-operative transesophageal echocardiogram, the plaintiff's aortic valve insufficiency allegedly appeared worse to Dr. Khan, and he elected to also replace Mr. Dupre's aortic valve. Id. Also, during this surgery, Dr. Khan dissected the right lung off the front of the plaintiff's heart in order to expose the heart for the operation. [Rec. Doc. 1-1, ¶ 6] Later during the surgery, Dr. Khan discovered bleeding coming from that same lung, and determined that he needed to do a complete mobilization of the lung. Id. The dissection of the lung was done while Mr. Dupre was on cardiopulmonary bypass and was still fully anticoagulated. Id.

The plaintiff alleges that he had extensive bleeding at the conclusion of the surgery, which continued until that night. [Rec. Doc. 1-1, ¶¶ 7-9] The plaintiff alleges that the ongoing massive blood loss was noted in the charting with the chest tube outputs and the ongoing and escalating pressor and inotrope requirements, but it was not adequately treated nor was the source investigated. Id. Mr. Dupre's post-

–2–

operative care was being handled by both Dr. Azeem Khan and Dr. Imtiaz Khan. [Rec. Doc. 1-1, ¶ 12]

The plaintiff specifically alleges that Dr. Azeem Khan was told of the excessive bleeding after the surgery and again at 10:25 p.m. on September 21, 2020. [Rec. Doc. 1-1, ¶¶ 10-11] By 6:00 p.m. on the night of his surgery, the plaintiff had lost approximately half of his total blood volume. [Rec. Doc. 1-1, ¶ 9] Within three days of the procedure, the plaintiff's extremities were noted to be mottled and without pulses, and over the course of the next several days, all four of Mr. Dupre's extremities were found to be gangrenous. [Rec. Doc. 1-1, ¶ 12] On October 27, 2020, the plaintiff underwent a bilateral amputation of his lower extremities and on November 6, 2020, the plaintiff underwent bilateral amputations through the distal humerus with myotenodesis. [Rec. Doc. 1-1, ¶¶ 13-14]

On September 10, 2021, the plaintiff filed suit against OLOL in the 15th Judicial District Court for the Parish of Lafayette, Louisiana, alleging that OLOL is liable for administrative negligence in (1) failing to develop and/or implement and/or enforce adequate policies and procedures to credential and/or grant privileges to physicians; (2) negligently credentialing Dr. Azeem Khan to perform cardiothoracic surgical procedures on the hospital's campus; and (3) negligently credentialing Dr. Imtiaz Khan to perform cardiothoracic surgical procedures on the hospital's campus.

Simultaneously with the filing of this lawsuit, the plaintiff filed a complaint against Dr. Azeem Khan and Dr. Imtiaz Khan with the Medical Review Panel.

On September 21, 2021, the plaintiff amended his Complaint to add Hospira and Pfizer as defendants. The plaintiff alleges that Hospira is the manufacturer of Levophed (norepinephrine bitartrate) (hereinafter "Levophed"), a medication the plaintiff was administered during his procedure. The plaintiff alleges that he was administered an excessive amount and/or bad batch and/or defective dose of Levophed which resulted in vasoconstriction in his blood vessels and/or poor perfusion to his extremities, ultimately causing or contributing/ to all four of his extremities being found to be gangrenous and being amputated. The plaintiff further alleges that Pfizer is the manufacturer of Heparin Sodium Injection USP (hereinafter "Heparin"), which resulted in immune heparin-induced thrombocytopenia, which is characterized by an increased risk of thrombosis and/or poor perfusion to his extremities, ultimately causing or contributing to all four of the plaintiff's extremities being found to be gangrenous and being amputated. In his Amended Complaint, the plaintiff alleges claims under the Louisiana Products Liability Act ("LPLA") against Hospira and Pfizer. The plaintiff alleges that all defendants are solidarily liable for his injuries and damages.

On October 29, 2021, defendants Hospira and Pfizer removed this action on the basis of diversity jurisdiction. These defendants also filed a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim [Doc. 16], which seeks to dismiss the claims against them as the manufacturers of Levophed (manufactured by Hospira) and Heparin (manufactured by Pfizer) on grounds the plaintiff failed to plead sufficient facts to establish that the products were defective and/or led to the plaintiff's injuries.

On November 24, 2021, the plaintiff filed the instant Motion to Remand, in which he asserts that this suit was improperly removed because OLOL is a Louisiana citizen and, therefore, complete diversity is lacking.

## LAW AND ANALYSIS

### I. Standard of Review and Improper Joinder

The federal district courts have original jurisdiction over cases in which the parties are diverse in citizenship and the amount in controversy exceeds $75,000, pursuant to 28 U.S.C. §1332. The procedural mechanism by which a party may remove a matter from state court to a federal district court is provided in 28 U.S.C. §1441 and §1446.

Generally, upon the filing of a motion to remand, the removing party bears the burden to prove that federal jurisdiction exists. *De Aguilar v. Boeing Co.*, 47 F.3d

1404, 1408 (5th Cir. 1995). Thus, the defendants, as the party seeking to invoke federal diversity jurisdiction under §1332, bear the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000. *Garcia v. Koch Oil Co. of Texas Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).[1]

When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 576 (5th Cir. 2004) (en banc). The removal statute must be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand and against federal-court jurisdiction. *Carpenter v. Wichita Falls Indep. Sch. Dist.,* 44 F.3d 362, 366*; Acuna v. Brown & Root Inc.,* 200 F.3d 335, 339 (5th Cir. 2000). "To demonstrate improper joinder of resident defendants, the removing defendants must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Gasch v. Hartford Acc. & Indem. Co*., 491 F.3d 278, 281 (5th Cir. 2007), quoting *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006).[2]

---

[1] The sole issue in this case is whether the defendants are diverse.
[2] The removing defendants do not contend actual fraud in the pleadings. Defendants rely instead upon the second category of improper removals. As such, the threshold question is whether "there

While the court has discretion to "pierce the pleadings and consider summary judgment-type evidence in the record" in determining whether joinder was improper, it "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004) (citing *Travis*, 326 F.3d at 648-49.). Thus, "although the type of inquiry into the evidence is similar to the summary judgment inquiry, the district court is not to apply a summary judgment standard but rather a standard closer to the Rule 12(b)(6) standard." *Id.* Any contested issues of fact and any ambiguities of state law must be resolved in the plaintiff's favor. *Id.* Finally, the Court "must also take into account the 'status of discovery' and consider what opportunity the plaintiff has had to develop its claims against the non-diverse defendant." *Id.* at 334-36; see also *Travis*, 326 F.3d at 650-51 (noting that when discovery was ongoing "simply pointing to the plaintiff's lack of evidence at stage of the case is insufficient" to establish improper joinder). At this stage of the litigation, Plaintiff is not expected to produce evidence sufficient to survive a motion for summary judgment; he must only show a "reasonable basis for the [] court to predict that the plaintiff might be able to recover." *Smallwood*, 385 F.3d at 573; *see*

---

is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Gasch,* 491 F.3d at 281. citing *Smallwood, supra.*

–7–

*also Guillory v. PPG Indus., Inc*., 434 F.3d 303, 308–09 (5th Cir.2005) (explaining "[w]e do not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiff might do so").

## II. Was OLOL Improperly Joined?

The Louisiana citizenship of OLOL is uncontested and the plaintiff moves to remand on the basis that OLOL's presence in this suit destroys complete diversity. The removing defendants contend, however, that OLOL was improperly joined and, consequently, that its citizenship need not be considered when analyzing whether the parties are diverse. The defendants argue there is no possibility of recovery against OLOL because the plaintiff's claims against OLOL arise under the Louisiana Medical Malpractice Act, La. Rev. Stat. §40:1231.1, et al. Defendants contend that the plaintiff has failed to exhaust administrative remedies under the Act because the claims have not been presented to a Medical Review Panel, which is jurisdictionally necessary before the filing of the claim in court. Accordingly, this Court must determine whether the plaintiff's claims against OLOL fall under the LMMA or whether he has a possibility of recovery against OLOL for negligent credentialing as a stand-alone tort.

In the original petition, plaintiff couched his claim against OLOL as a claim

–8–

sounding in negligence, alleging as follows:

17.

Upon information and belief, the surgeons in question (Drs. Azeem Khan and Imtiaz Khan) were known to have extraordinarily high complication rates and/or were not properly trained, such that the surgeons should not ever have been given credentials to practice medicine at OUR LADY OF LOURDES HEART HOSPITAL.

18.

Upon information and belief, the surgeons in question were also known to not be able to appropriately handle post-operative complications progressing to the loss of limb, loss of life, and/or loss of organ systems, such as the complications suffered by DONALD DUPRE. As such, the surgeons should not ever have been given credentials to practice medicine at OUR LADY OF LOURDES HEART HOSPITAL.

19.

Upon information and belief, subsequent to the incidents at issue in this case, OUR LADY OF LOURDES HEART HOSPITAL revoked the privileges and/or declined to renew the privileges of both surgeons (Drs. Azeem Khan and Imtiaz Khan), and they have moved to Baton Rouge, Louisiana.

20.

Upon information and belief, OUR LADY OF LOURDES HEART HOSPITAL negligently credentialed and/or privileged Dr. Azeem Khan and/or Dr. Imtiaz Khan to perform cardiothoracic surgical procedures on its campus prior to Mr. Dupre's September 21, 2020 procedure. The negligent credentialing of Dr. Azeem Khan and/or Dr. Imtiaz Khan caused Mr. Dupre to suffer catastrophic losses and

damages due to the surgeons' multiple acts of ordinary and/or gross negligence.

* * * *

23.

Defendant, Our Lady of Lourdes Heart Hospital, is liable unto Petitioner because Mr. Dupre's injuries and damages were proximately and legally caused by the fault, including negligence, of Our Lady of Lourdes Heart Hospital and its physicians, residents, officers, agents, employees, contractors, and any and all other individuals for whom it is financially and/or legally responsible, including the following negligent acts of omission and commission, which may be shown at trial:

> a. Failure to develop and/or implement and/or enforce adequate policies and procedures to credential and/or grant privileges to physicians;
>
> b. Negligently credentialing Dr. Azeem Khan to perform cardiothoracic surgical procedures on the hospital's campus; and/or
>
> c. Negligently credentialing Dr. Imtiaz Khan to perform cardiothoracic surgical procedures on the hospital's campus.

Defendants, relying on *Flagg v. Stryker Corp.*, 819 F.3d 132 (5th Cir. 2016), argue the plaintiff's claims as pled against OLOL fall under the LMMA as a matter of law. *Flagg* is a seminal Fifth Circuit case addressing the improper joinder of a non-diverse hospital, where the allegations concerning the conduct of the hospital clearly fall under the LMMA. *Flagg* does not address the distinct question

presented herein, namely, whether a claim of "negligent credentialing" falls under the term "medical malpractice" as defined by the LMMA,[3] or whether such a claim is more properly interpreted as an administrative negligence claim that does not fall under the Act's purview.

The Louisiana Supreme Court has issued two decisions that address this precise issue: *Billeaudeau v. Opelousas General Hospital Authority*, 218 So.3d 513 (La. 2016) and *Thomas v. Regional Health System of Acadiana, LLC*, 2020 WL 500019 (La. 2020). In *Billeaudeau*, after their daughter was improperly treated for a seizure that was actually a stroke and sustained irreversible brain damage, the plaintiffs pursued medical malpractice claims against Dr. Konodilo Skirlis-Zavala under the LMAA but also brought suit against Opelousas General Hospital, where their daughter received treatment in the emergency room. *Id.* at 514. The plaintiffs

---

[3] The LMMA defines "malpractice" as:

. . . any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

La. Rev. Stat. §40:1231.1(A)(13).

–11–

specifically alleged that their daughter's injuries and damages were caused by the fault, including negligence, of OGH for, *inter alia*, the negligent credentialing of Dr. Zavala. *Id.* at 515.

The plaintiffs moved for partial summary judgment, seeking a determination that their negligent credentialing claim was not subject to the LMMA's cap on damages. *Id.* The district court granted the motion, and the Third Circuit Court of Appeal affirmed. *Id.* The Louisiana Supreme Court granted writs to determine the correctness the lower courts' findings that claims of negligent credentialing are not claims of malpractice under the LMMA. *Id.* Noting that the general definition of "malpractice" focuses on conduct, the Court applied the six factors set forth in *Coleman v. Deno*, 813 So.2d 303, 315 (La. 1/25/02) to determine whether certain conduct by a qualified health care provider constitutes "malpractice" as defined under the LMMA:

(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,

(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,

(3) whether the pertinent act or omission involved assessment of the patient's condition,

–12–

    (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,

    (5) whether the injury would have occurred if the patient had not sought treatment, and

    (6) whether the tort alleged was intentional.

*Coleman*, 813 So.2d at 315–16, *cited in Billeaudeau*, 218 So. 3d at 521.  After evaluating the six factors, the Court held:

> Although OGH asserts plaintiffs' claims sound in medical malpractice or are so intertwined with their settled medical malpractice claims they cannot be severed from those claims, particularly the negligent supervision claims, we find the application of the *Coleman* factors demonstrate the alleged negligent credentialing was *administrative*, not medical, in nature. Consequently, the tortious conduct alleged herein, *i.e.*, OGH's negligent administrative decision making, is separate and distinct from the medical decisions and conduct directly related and integral to the rendering of medical care and treatment by the health care providers to the patient in this case, *i.e.*, the medical malpractice covered by and to subject to the LMMA.

*Billeaudeau*, 218 So. 3d at 527 (emphasis in original).  Thus, *Billeaudeau* holds that a negligent credentialing claim can fall outside the purview of the LMMA if an analysis of the *Coleman* factors shows that the specific claims are not encompassed by the Act's definition of "medical malpractice."

In *Thomas*, decided four years later, the mother of a baby born prematurely sued, *inter alia*, Lafayette General Medical Center ("LGMC") and Women's and Children's Hospital, Inc. ("W&C"), after her daughter was treated by a pediatric

–13–

cardiologist who failed to diagnose pulmonary artery hypertension over several months. 2020 WL 5000019 at *1-2. In her petition, the plaintiff alleged that LGMC and W&C were liable under general tort law because they "negligently credentialed Dr. Dalal and negligently provided her with privileges to practice" in their facilities "even though [they] knew or should have known she was not board certified in the field of pediatric cardiology." *Id.* at *2.

LGMC and W&C filed dilatory exceptions of prematurity, asserting that they were qualified healthcare providers under the LMMA and were entitled to have the plaintiff's negligent credentialing claims presented first to a medical review panel pursuant to R.S. 40:1231.8(B)(1)(a)(i). *Id.* at *2. At the time the hospitals filed their exceptions of prematurity, *Billeaudeau* was pending, and the parties agreed to stay the hearing on the exceptions until the Court rendered an opinion. *Id.*

Once *Billeaudeau* was decided, the trial court granted the hospitals' exceptions of prematurity and dismissed the plaintiff's claims without prejudice. *Id.* at *3. The plaintiff appealed and the Third Circuit Court of Appeals, applying the *Coleman* factors, reversed, finding negligent re-credentialing claims do not fall under the LMMA. *Thomas v. Regional Health System of Acadiana, LLC*, 266 So. 3d 354 (La. App. 3rd Cir. 2/27/19). On appeal to the Louisiana Supreme Court, the hospitals presented the affidavit of LGMC's System Director of Medical Staff Services, which

stated that the hospital initially credentialed Dr. Dalal and granted her clinical privileges in June 1987. *Id.* at *5. She was re-credentialed every two years, and every year after she turned 65 until her retirement in 2017, through an ongoing process that included peer review of her patient care. The hospitals contended that peer review and re-credentialing are the means by which a medical institution continually supervises physicians, a process that is distinct from the administrative decision to initially credential the physician upon hiring presented in *Billeaudeau*. *Id.*

Drawing a distinction between credentialing and re-credentialing, the *Thomas* Court held:

> After considering these factors, we find that Thomas's allegations against the hospitals for negligent re-credentialing necessarily fall within the definition of "malpractice" under the LMMA because they constitute an "unintentional tort ... based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient ... in the training or supervision of health care providers." La. R.S. 40:1231.1(A)(13). Our holding comports with this court's statement in *Billeaudeau* that "the treatment-related medical decisions and dereliction of skill with which the LMMA is concerned, and for which a hospital can be held liable for 'malpractice,' fall under the 'supervision and training of the health care providers' once they enter the building and engage in the practice of medicine therein." 218 So. 3d at 523. To the extent that plaintiff's allegations against the hospital include the hospital's *initial* credentialing of Dr. Dalal in 1987, we distinguish *Billeaudeau* on its facts.

–15–

> Unlike the allegations in *Billeaudeau*, plaintiff's petition here does not involve a hospital's alleged failures to follow its own bylaws, follow up on references, or review the applicant's compliance with professional education requirements before granting initial privileges. Indeed, many of the specific allegations of negligent credentialing in *Billeaudeau* could be asserted against any number of employers not just in the realm of healthcare for negligently hiring an unqualified professional.

*Id.* at *5-6.

Thus, in *Thomas*, the Supreme Court distinguished *Billeaudeau* on its facts and drew a distinction between the initial *credentialing* of a doctor at a hospital -- an action considered to be administrative in nature – and re-credentialing, an ongoing process that requires peer review of a doctor's patient care. Because of this ongoing process which requires review of a doctor's patient care, the act of re-credentialing was found to be "based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient ... in the training or supervision of health care providers" – and fall under the definition of "malpractice" under the LMMA.

Considering the *Coleman* factors and recognizing that the removal statute must be strictly construed in favor of remand, the undersigned concludes that the defendants have not met their heavy burden of showing that the plaintiff has "no possibility of recovery" against OLOL for negligent credentialing in state court. This case does not involve re-credentialing, but rather, involves the initial

–16–

credentialing and hiring of Dr. Azeem Khan and Dr. Imriat Khan. As *Billeaudeau* makes clear, such a claim can fall outside the purview of the LMMA. To the extent that the *Thomas* decision has created legal nuances between credentialing and re-credentialing, the undersigned finds that the plaintiff's claims are more akin to those which were presented in *Billeaudeau*. Indeed, this Court is obliged to resolve any contested issues of material fact and any ambiguity or uncertainty in the controlling state law, in the plaintiff's favor. *McKee v. Kan. City S. Ry. Co*., 358 F.3d at 334. Ergo, so long as *Billeaudeau* remains good law, the undersigned finds that there is a possibility of recovery against OLOL for negligent credentialing.

Because the defendants have failed to carry the heavy burden of proving that the joinder OLOL was improper, the citizenship of OLOL is considered in this motion to remand. Accordingly, this matter must be remanded to state court because the presence of OLOL in the lawsuit destroys complete diversity.[4]

## CONCLUSION

Considering the foregoing, IT IS RECOMMENDED that the plaintiff's Motion to Remand [Doc. 18] be GRANTED, and that this matter be REMANDED to the Fifteenth Judicial District Court for the Parish of Lafayette, Louisiana.

---

[4] Lacking subject matter jurisdiction in this case, this Court makes no findings on the Motion to Dismiss [Doc. 16] filed by Pfizer and Hospira.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, this 2nd day of March, 2022.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

–18–